May it please the Court, my name is Martin Crowley, and I represent the plaintiff-appellant Dennis, also known as Sam Dehne. I'd like to reserve a portion of my time at the conclusion for a short rebuttal, if I may. Over in Reno, Your Honors, there is a situation where a person can go to a public podium at a government meeting and claim to be the President of the United States and accuse officials of sucking blood from aliens and other outrageous statements, and that that public body will quietly sit there and listen. But when my client, Lt. Col. Sam Dehne, an Air Force Academy graduate and retired fighter and bomber pilot who spent 26 years of his career defending America and the freedoms that we hold true, and who year after year lives up to his sworn duty and oath to defend the Constitution like virtually no contemporary citizen in Nevada, criticizes that Reno government, he is the victim of gross retaliation, including being thrown in jail. Counsel, is it correct, is it not, that if a person is disruptive in a public meeting, the person can be removed from the public meeting regardless of the content of what they're saying? Well, you've combined it with regardless of the content, and I would disagree. Let me start by asking, can a disruptive person be removed from a public meeting? Yes. Okay. And if a person is disruptive, and I understand you don't concede that, but if a person were screaming and throwing things and, you know, getting in everybody's way, then they could be removed even if the person removing them couldn't stand them and was delighted with the opportunity, correct? I believe that that could happen in that scenario. But as you indicated, in this case, we don't concede that Mr. Denea was disruptive, and certainly that he wasn't even out of line. He was called out of the audience by the chairman of the airport board. He was sitting quietly in the audience. Here's the question that I ultimately have, and that is, if he was clearly not disruptive, your point prevails. If he clearly was disruptive, the other side prevails. The question is, what happens if reasonable people can differ about whether or not he was disruptive? Is that a situation in which there's qualified immunity because a reasonable person could think that he was being disruptive? Well, in my position that the reasonable person question is an issue of fact. Whether or not Mr. Hill was reasonable in thinking that Mr. Denea was out of line or things to that effect is a question of fact. The jury has to decide whether or not his assumptions and things that he did in regards to those assumptions were fair in light of the circumstances and everything that had transpired on that day. And I don't think there's any other way to determine that. I don't think it's fair for the court sitting back to make a determination if the actions of the public official were warranted. I think that's what the Constitution provides for a jury to determine. Is there any situation in which you would agree that qualified immunity was available in this kind of a case? I'm certain that there would be. I'm just trying to think of an example as you said that, but I'm certain that there would, and I would agree if I could think of the example. Mr. Denea was ordered by Mr. Hill to sit down. Now, just prior to that, of course, he had been seated in the audience quietly, and he was specifically addressed and called out of the audience by Mr. Hill. He said, Mr. Denea. Mr. Denea rose from his seat, took two steps forward, and said yes, and stood there. And then he was wrongfully accused of saying something derogatory about either the public comment being made, the person at the podium, or the public body that was seated in the front. Mr. Denea was right in reminding Mr. Hill or telling Mr. Hill that he had made no such comment in regards to the person speaking or the public body. He had made a quiet comment to the person seated next to him not to pick up the paper that he had set on the floor next to him because there was spit on it. But the audio tape and the audio track of the video tape clearly indicate that his comment wasn't even significant enough to be picked up by either of those recordings. So in no way was this a disruption of any kind. However, had it even been heard by anyone else in the room, it is not improper for Mr. Denea to remind somebody sitting next to him not to touch a piece of paper that he had spit on. And as you are aware from the briefs, this had occurred just a couple of minutes before this event took place, where Mr. Denea vehemently derided the chairman and the board for changing the rules of public comment in a dictatorial fashion. And up to that point, he's called from the audience. He's admonished for a remark that the Mr. Hill, I guess, thought he heard. He says, I didn't say that. And up to that point, there's no real issue about a justification for throwing him out of the meeting. What about what occurs after that when he told that he's not allowed to make remarks like that? He says, you're wrong. I didn't make that remark. All right. Then what? Well, at that point, Mr. Denea was ordered by Mr. Hill to sit down. And the videotape shows that within 20 seconds of that directive being given by Mr. Hill, Mr. Denea was seated in his chair again. And the videotape also shows that at the time he was removed from the meeting, he was seated in his chair and was grabbed and forcefully removed from his chair by two armed police officers. He followed the directive to sit in the chair. The argument had somewhat finished, although it was continuing at that point, because Mr. Hill refused to concede that he was wrong in his accusation of Mr. Denea. That was his only point that Mr. Denea wished to make, is that he had been wrongfully accused in public on television by a public official, which I think he had a right to do so. But I believe that Hill, in his anger and animosity towards Mr. Denea, because this isn't their first encounter, he's there every meeting, but he was particularly upset by his. Doesn't that cut against your position in the sense that, according to, as I understand the records in these two cases, that he has spoken in his critical fashion dozens and dozens and dozens and dozens of times without being ejected? Doesn't that suggest that there may have been cause this time, since most of the time he's allowed to speak in opposition? No, I don't believe so. Just because the public official tolerates it on other occasions and accepts the chastisements and the speeches that are given by Mr. Denea doesn't mean that his conduct, the public official's conduct, on this occasion is justified or acceptable under the First Amendment. The public official has an obligation and a duty under the Constitution to act in restraint continually, as long as he sits in that chair. It doesn't matter how many times he's allowed, we should say allowed, I guess, Mr. Denea to give his speeches and direct his criticisms to the board. But on any time that the public official exceeds his authority and violates the First Amendment, something has to be done about it, and that's what the action was brought in the court, to bring that attention to the public. It looks like I only have a couple of minutes, so I think I better reserve that. Is that right? Yes, that's right. You have a little under two minutes. We'll give you the two minutes. Go ahead. To the courts, counsel, my name is Thomas Beckow, and I represent the airport authority of Washoe County. And I think this case can be summed up in one or two brief sentences from the court in the Scroggins v. City of Topeka, Kansas case, where the court says, whether the forum be the courtroom or the chamber of the legislature itself or of a political subdivision of the state, there must be order. It is frivolous to suggest the First Amendment stands in the way of that imperative. There's no doubt, and as Judge Graber has pointed out, that the government has the right to impose reasonable time, place, and manner restrictions, and that the government has a significant interest in conducting efficient, effective, and dignified meetings of public bodies, and that the officials presiding over those bodies have the absolute right to maintain the decorum within those respective meetings. And the court has pointed out that disruptions can occur, whether by virtue of relevance, duration, tone, or manner. And I think this is a very important case because the First Amendment cases in the context of public meetings are dealt with differently than they are in the context of employment or other situations. And as the court pointed out, what the court should look at is just one thing, and that is whether or not the person has engaged in disruptive conduct. And the court, this court, in the White v. Norwalk case. What do we do, counsel, if it's a really close case? I mean, I've watched the tape, and I would have to say it's not, to my eye, not clearly one way or the other. It's not clearly disruptive, but it's not clearly not disruptive, which might suggest that the counsel was being quite thin-skinned based on whatever past interactions or dislike between the parties or whatever. What do we do if it's a close case? Does that go to the jury, or does that mean qualified immunity? What does that mean? I believe not. It should definitely not go to the jury. And this court has established that the parliamentarian, the person that's in control of the meeting, has got to be given great deference to try to determine whether or not the meeting is going. But if he's biased and he accuses somebody of something unfairly, do you give him the same deference that you do to the objective person in control of the meeting? Well, I think you do have to make an objective analysis, and clearly I think the reasonableness of his conduct has got to be made on an objective basis, and I think you have to take the subjective intent out of it. Well, take the objective intent out, but look at the person and objectively say. Assume from Mr. Dene's side, since we're on summary judgment, assume the inference that you have a biased hearing officer who's in charge and who's looking for an excuse to find disorder and who then accuses the person of something he didn't do and will not let him respond to explain that he did not do what he did. But he orders him to be seated when he's starting to say what he actually said and will not allow him to get his response there. Would that then not, if you looked at it that way, present a question that you go to the jury? Well, first off, I think the facts that you stated are very wrong because first off, he admits that he made the statement,  admits that he said it's got spit on it, spit on it, yeah. But the chairman Hill said to him, he said, hold your comment for a minute, you made a comment just now that is unacceptable. All right, now what's unacceptable if he said to the person next to him, don't pick up that piece of paper, it has spit on it? Is that an unacceptable comment? What he heard was the spit on it, and this came right after he was up there and he had spit on something. And then Mr. Dene tried to explain to him the context in which those words were used. Which he did. No, he did not. He was, he said, he took my piece of paper, it said, you said spit on it, it will not occur again or you will be ejected from this meeting. Mr. Dene then said, he took my piece of paper from me, he took my piece of paper, Mr. Hill said, please be seated. And all I did was warn, he was in the middle of his explanation, and all I did was warn him there was spit on the paper. Bang goes the gavel, be seated. That's, it was, he was trying to respond to a public accusation of wrongdoing. And he had made his explanation. He was interrupted in the middle of it, which shows that the motive of the person was to try to prevent him from making the explanation. Isn't that what created the disorder? Again, looking at this only from the side of the plaintiff. Understood. And that's why I think you have to just completely take this stuff out of it and look at it objectively and ask one simple question. You know, did it appear that he was creating a disturbance within that meeting? And I think because this Court has clearly provided that you have to afford substantial deference to the parliamentarian, you must ask the further question whether it was reasonable for him to even perceive that. And if you find either that he was a disruption or it was reasonable for that parliamentarian to perceive it. Let's take the question of whether Mr. Dene was prevented from asserting his First Amendment rights to respond to a public accusation over television that he was engaged in wrongdoing. Did he have a right to make a response to that? Well, if not, or if he did, is that not in itself a violation of his First Amendment rights? Initially, this case started out with that being the angle, that he was engaged in protected First Amendment speech after he had gone to the audience and when this discourse was going on. But the case completely changed mid-span, and then it became, no, we're not even going to argue that he was engaged in protected First Amendment speech during that little argument. What the case then became was he was engaged in protected First Amendment speech before and that that was the motivation for this action happening after. It really wasn't presented as a case that he had the right under the First Amendment to confront Chairman Hill who allegedly had falsely accused him of making this statement when, in fact, Chairman Hill was exactly right what he heard. And there's been a lot of discussion about, well, other people in the audience didn't hear it. Clearly, it was a comment that the panel members heard because Chairman Hill made comment about it. And then later on, Mr. Dene flat-out admitted, I made that statement, spit on it, but that my intent wasn't to comment upon the speaker or the board. He said, but that I like what the full statement was. I mean, you may say communists, which may be part of the sentence that there are communists in Russia. But if it's understood, as Mr. Hill's statement was, as an accusation, you called me a communist, you would think you would be entitled to say, no, that's not what I said. I said there were communists in Russia. Well, and that's why you have to take it in context of what had happened before, where he had actually torn up the piece of paper, spit on it during the course of the public meeting as he was really loud and yelling. And when Chairman Hill heard the comment against spit on it, his interpretation was that he's commenting upon something that the speaker is saying who's right within a matter of feet from him, and that's his interpretation. Whether that's right or wrong, no one will ever know. But what you have to do is just look at it and ask the question of whether or not it was reasonable for him to believe that this was a disruption to the public meeting. And then from that point, the thing just snowballed. And I don't think anyone can say that after that thing got started that he was not a disruption to that public meeting, because clearly he was yelling, he was ranting, he was asked to leave. Chairman Hill repeatedly said to him, if you don't be seated, you're going to be asked to leave. But he was seated. He sat down. Yeah, but he sat down. He sat down, and the video shows he was seated. And at the time he was ejected, he was still seated, right? So how is he being disruptive? Well, because, yes, he is seated. But the reason that he's seated is because the officers go over to take him out, and he says, you're going to have to drag me out of here. So then he sits down as a means of making their job much more difficult to get him out of there. When he's saying be seated, when Chairman Hill is telling him to be seated, he's really telling him to stop the disruption. There's no doubt about that. The final point that I want to make, and this goes back to the question before about whether or not qualified immunity fits into this deal, and I think the Brewster case is very, very good about describing the thought process that you have to go through and we as lawyers have to go through. It's about a four-step process in determining whether or not the speech is constitutionally protected. You have to balance, then, the interests of the government against the rights of the speaker. And then you have to ask the next question of whether or not a reasonable person in, say, Chairman Hill's position could have believed that his conduct was constitutional. He has to make that determination in a matter of 10 or 15 seconds. And I think the Brewster case is very good at showing that we cannot, you know, force upon just a member that's not trained, clearly is not a lawyer, not trained in the law, to make these snap decisions in a matter of seconds and to take into account, you know, the hundreds of cases that have defined what First Amendment protected speech is. And in those contexts, you just cannot say as a matter of law that he knew at that moment that it was clearly established that what Mr. Dene was doing was in violation of the Constitution. I think it's so unfair to hold those people to these lofty standards. Well, it's not such a lofty standard for a public official to allow a citizen to respond to an accusation. There's not some high and mighty difficult principle that Mr. Hill was incapable of divining because it's so lofty. It's a very simple ground-level explanation that a public official who accuses a citizen must allow him to respond and not throw him out of a meeting. That's one way to look at this lofty principle. You can look at it this way, but you have to say that you have to acknowledge that he told his side of the story. No, I don't acknowledge that he told his side of the story because I just read you he was halfway through it when he was ordered to stop. Certainly he was, but he told his story, and then he accused the chairman of being wrong, and then he kept saying, I'll leave. He's demanding that the chairman admit that he was wrong, when in fact the chairman was absolutely correct in what he reported that he said. What, that it was an unacceptable statement that Mr. Dene made? That's what the chairman said. You made an unacceptable statement. It will not be tolerated here. And Mr. Dene tried to explain the full statement. And Chairman Hill said, you said spit on it. And that's exactly what Mr. Dene said. And is that an unacceptable statement with the sentence in full? But I told him don't pick up the piece of paper. And after he had made that statement, if he had simply sat down, as the chairman told him to, to cease his disruption, that would have been the end of the case. But he didn't. Or if the chairman had said, I am sorry, I didn't know that was his statement. Okay, and does the Constitution compel Chairman Hill to falsely admit that he was wrong when in fact he was right? This could have ended in any number of ways. There's not only the one way this dispute could have been avoided. Right, but we have to speculate about that. And that's what this Court says is we can't speculate about it. We don't know what's going to happen. We have to allow these guys some deference to make these snap decisions at that point in time. Who knows? He may have just sat down on his own. This Court has made it very clear that you have to give these guys some deference. They don't have a crystal ball to determine what's going to happen. If he sat down, didn't he have a right to stay there? It was quiet. Absolutely. Well, what was he saying? The only thing he was not being quiet about, he didn't want to be ejected. He was yelling and screaming the whole time. Saying what? He was saying, well, then you're wrong. Then admit that you're wrong. Acknowledge that you were wrong. I did not say anything about spitting, which he admits he did say something about spitting. Then he says, I won't go. You'll have to drag me out of here. Isn't that what the disruption is? He didn't want to be dragged out. Yes, and he says he told a lie, and I challenged his lie. Chairman Hill did not tell a lie. He had no ability and no right to challenge what Chairman Hill said. He had no ability to challenge what Chairman Hill said. Why not? He's an American citizen who was told he engaged in unacceptable conduct. Why did he have no right to challenge that? Well, he says that Chairman Hill said that he told a lie. That's what he's challenged. He's claiming that Chairman Hill told a lie about what he said, and what Chairman Hill described Mr. Denea as saying was the absolute truth. He said, spit on it. And that's all he accused Mr. Denea of saying. He said, you said, spit on it, and it will not occur again, or you will be ejected from this meeting. If you tell the next person, don't pick up that piece of paper, it has spit on it, you will be ejected from the meeting. Is that what he meant? Of course not. But that's not the context in which this occurs. You've got to take it in the context of what he had done in front of that public body before, standing up there, tearing it up, spitting on it. These were the type of antics that he had, and frequently from the audience. When other people were talking, he would make some comment. He would throw something out. We're way over time for you. Pardon me? We're way over your time. All right, thank you. Thank you, Captain. We'll give you two minutes. Mr. Hill interrupted this meeting. He called Diné out of the audience. He instigated this confrontation that was taking place in this so-called disruption. Everything was the genesis was Mr. Hill. He was wrong in his assumption of what Mr. Diné said. He may have been right if he did think he heard him say spit on it in a way that was, did not hear the rest of the sentence and just heard spit on it. And Mr. Diné. Don't say he didn't have a right to say what he did. Mr. Diné tried to correct him, and he wasn't going to be allowed to correct him. The misconception had been placed in the minds of the public and that board by Mr. Hill that he had made an incorrect statement. Mr. Diné, although he was interrupted in the middle of the sentence, did complete his sentence and explained the context. And it was after that that he kept saying, you're wrong and you must admit that you're wrong. Does he have a right to continue to do that? I think he does. I think he has a right to an apology by a public official who castigated him on public television for something that he didn't do. He has a First Amendment right to receive an apology? I believe in the context in this case he absolutely does. Where do you derive a First Amendment right to receive an apology, to force someone else to say something that they don't choose to say to you? Because the chairman in his position of authority in governing that meeting on public television like that had just embarrassed him in front of everybody, and he should recognize that he was wrong and not show the speech of other citizens who might wish to speak out. Everyone in that room is probably shaking in their boots to speak out on anything at that point. Where do you find a right to compel? You could sue someone, perhaps, but where do you find a right to compel an apology? Well, right on the spot. It would have certainly ended it, and it certainly would have cleared up the issue, and the chairman is directing the meeting. That has to do with good or bad judgment, which is, you know, apart from a constitutional right to compel someone else to say something that they don't choose to say. But I had a point on that. When we're talking about the heat of the moment, the chairman in exercising judgment calmly and coolly, he wasn't there alone. He had an attorney sitting right at his elbow. I mean, if he was worried about whether his conduct was appropriate or inappropriate, he certainly could have stopped for a second and say, you know, am I handling this wrong, or counsel and get some advice on that, but he didn't. That cuts both ways, too, because presumably if the lawyer were worried about what the city was doing, the lawyer would have pulled on his sleeve and said, you know, maybe you better do something different. And we'll get into that in the next case. I know. Denae was punished after the fact for the comments that he had made, and that's what this case is about. Maybe we're going to get to the next case. Okay. The case is arguably submitted.
judges: Reinhardt, Graber, Rhoades